(Slip Opinion)                OCTOBER TERM, 2010                1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* TOHONO O'ODHAM NATION

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 09–846.   Argued November 1, 2010—Decided April 26, 2011

Respondent Tohono O'odham Nation (Nation) filed suit in Federal District Court against federal officials who managed tribal assets held in trust by the Federal Government, alleging violations of fiduciary duty and requesting equitable relief.  The next day, the Nation filed this action against the United States in the Court of Federal Claims (CFC), alleging almost identical violations and requesting money damages.  The CFC case was dismissed under 28 U. S. C. §1500, which bars CFC jurisdiction over a claim if the plaintiff has another suit "for or in respect to" that claim pending against the United States or its agents in another court.  The Federal Circuit reversed, finding that the two suits were not for or in respect to the same claim because, although they shared operative facts, they did not seek overlapping relief.

*Held*:

1. Two suits are for or in respect to the same claim, precluding CFC jurisdiction, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.  Pp. 2–9.

(a) Since 1868, Congress has restricted the jurisdiction of the CFC and its predecessors when related actions are pending elsewhere.  *Keene Corp.* v. *United States*, 508 U. S. 200, 212, held that two suits are for or in respect to the same claim when they are "based on substantially the same operative facts . . . , at least if there [is] some overlap in the relief requested," but it reserved the question whether the jurisdictional bar operates if suits based on the same operative facts do not seek overlapping relief.  The rule now codified in §1500 was first enacted to curb duplicate lawsuits by residents of the Confederacy who, in seeking to recover for cotton taken by the Federal Government, sued the Government in the Court of Claims and,

at the same time, sued federal officials in other courts, seeking tort relief for the same actions. Section 1500's robust response to this problem bars CFC jurisdiction not only if the plaintiff sues on an identical claim elsewhere, but also if the other action is related but not identical. The phrase "in respect to" does not resolve all doubt as to the bar's scope, but it suggests a broad prohibition, regardless of whether "claim" carries a special or limited meaning. Pp. 2–4.

(b) *Keene* permits two constructions of "for or in respect to" the same claim, one based on facts alone and the other on factual plus remedial overlap. The former is the more reasonable interpretation in light of the statute's use of a similar phrase in a way consistent only with factual overlap. The CFC bar applies where the other action is against a "person who, . . . when the cause of action . . . arose, was, in respect thereto, acting" under color of federal law. But at the time that a cause of action arose, the person could not act in respect to the relief requested, for no complaint was yet filed. Although the phrase at issue involves a "claim" rather than a cause of action, there is reason to think that both phrases refer to facts alone and not to relief. As *Keene* explained, "'claim' is used here synonymously with 'cause of action,'" 508 U. S*.,* at 210. And if the phrase that uses "cause of action," the more technical term, does not embrace the concept of remedy, it is reasonable to conclude that neither phrase does. Pp. 4–5.

(c) This reading also makes sense in light of the CFC's unique remedial powers. Because the CFC is the only judicial forum for most nontort requests for significant monetary relief against the United States and because it has no general power to provide equitable relief against the Government or its officers, a statute aimed at precluding duplicate CFC suits would be unlikely to require remedial overlap. Remedial overlap was even more unusual when §1500's rule was first enacted in 1868. The Federal Circuit could identify no purpose the statute served in light of that court's precedent. But courts should not render statutes nugatory through construction. The statute's purpose is clear from its origins—the need to save the Government from redundant litigation—and the conclusion that two suits are for or in respect to the same claim when they share substantially the same operative facts allows the statute to achieve that aim. Concentrating on operative facts is also consistent with the doctrine of claim preclusion, or res judicata. The Nation errs in arguing that this Court's interpretation unjustly forces plaintiffs to choose between partial remedies available in different courts. The Nation could have recovered any losses in the CFC alone. Even if some hardship were shown, this Court "enjoy[s] no 'liberty to add an exception . . . to remove apparent hardship.'" *Keene, supra,* at 217–218.

Syllabus

Pp. 5–9.

    2. The substantial overlap in operative facts between the Nation's District Court and CFC suits precludes jurisdiction in the CFC. Both actions allege that the United States holds the same assets in trust for the Nation's benefit, and they describe almost identical breaches of fiduciary duty. Pp. 9–10.

559 F. 3d 1284, reversed and remanded.

    KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, THOMAS, and ALITO, JJ., joined. SOTOMAYOR, J., filed an opinion concurring in the judgment, in which BREYER, J., joined. GINSBURG, J., filed a dissenting opinion. KAGAN, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 09–846

UNITED STATES, PETITIONER *v.* TOHONO O'ODHAM NATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 26, 2011]

JUSTICE KENNEDY delivered the opinion of the Court.

The Tohono O'odham Nation is an Indian Tribe with federal recognition. The Nation's main reservation is in the Sonoran desert of southern Arizona. Counting this and other reservation lands, the Nation's landholdings are approximately 3 million acres.

The Nation brought two actions based on the same alleged violations of fiduciary duty with respect to the Nation's lands and other assets. One action was filed against federal officials in district court and the other against the United States in the Court of Federal Claims (CFC). The Court of Appeals for the Federal Circuit held that the CFC suit was not barred by the rule that the CFC lacks jurisdiction over an action "for or in respect to" a claim that is also the subject of an action pending in another court. 28 U. S. C. §1500. The question presented is whether a common factual basis like the one apparent in the Nation's suits suffices to bar jurisdiction under §1500.

I

The case turns on the relationship between the two suits the Nation filed. The first suit was filed in the United

States District Court for the District of Columbia against federal officials responsible for managing tribal assets held in trust by the Federal Government. The complaint alleged various violations of fiduciary duty with respect to those assets. The Nation claimed, for example, that the officials failed to provide an accurate accounting of trust property; to refrain from self-dealing; or to use reasonable skill in investing trust assets. The complaint requested equitable relief, including an accounting.

The next day the Nation filed the instant action against the United States in the CFC. The CFC complaint described the same trust assets and the same fiduciary duties that were the subject of the District Court complaint. And it alleged almost identical violations of fiduciary duty, for which it requested money damages. The CFC case was dismissed under §1500 for want of jurisdiction.

A divided panel of the Court of Appeals for the Federal Circuit reversed. 559 F. 3d 1284 (2009). Two suits are for or in respect to the same claim, it reasoned, only if they share operative facts and also seek overlapping relief. Finding no overlap in the relief requested, the court held that the two suits at issue were not for or in respect to the same claim.

This Court granted certiorari. 559 U. S. ___ (2010).

## II

Since 1868, Congress has restricted the jurisdiction of the CFC and its predecessors when related actions are pending elsewhere. Section 1500, identical in most respects to the original statute, provides:

> "The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause

of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States."

The rule is more straightforward than its complex wording suggests. The CFC has no jurisdiction over a claim if the plaintiff has another suit for or in respect to that claim pending against the United States or its agents.

The question to be resolved is what it means for two suits to be "for or in respect to" the same claim. *Keene Corp.* v. *United States*, 508 U. S. 200 (1993), provided a partial answer. It held that two suits are for or in respect to the same claim when they are "based on substantially the same operative facts . . . , at least if there [is] some overlap in the relief requested." *Id.,* at 212. The *Keene* case did not decide whether the jurisdictional bar also operates if the suits are based on the same operative facts but do not seek overlapping relief. Still, *Keene* narrows the permissible constructions of "for or in respect to" a claim to one of two interpretations. Either it requires substantial factual and some remedial overlap, or it requires substantial factual overlap without more.

Congress first enacted the jurisdictional bar now codified in §1500 to curb duplicate lawsuits brought by residents of the Confederacy following the Civil War. The so-called "cotton claimants"—named for their suits to recover for cotton taken by the Federal Government—sued the United States in the Court of Claims under the Abandoned Property Collection Act, 12 Stat. 820, while at the same time suing federal officials in other courts, seeking relief under tort law for the same alleged actions. See *Keene*, *supra,* at 206–207; Schwartz, Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents, 55 Geo. L. J. 573, 574–580 (1967). Although the rule embodied in §1500 originated long ago, Congress reenacted the statute at various times, most

recently in 1948.  See Act of June 25, 1948, 62 Stat. 942; *Keene*, 508 U. S., at 206–207.

The text of §1500 reflects a robust response to the problem first presented by the cotton claimants.  It bars jurisdiction in the CFC not only if the plaintiff sues on an identical claim elsewhere—a suit "for" the same claim—but also if the plaintiff's other action is related although not identical—a suit "in respect to" the same claim.  The phrase "in respect to" does not resolve all doubt as to the scope of the jurisdictional bar, but "it does make it clear that Congress did not intend the statute to be rendered useless by a narrow concept of identity." *Id.,* at 213.  It suggests a broad prohibition, regardless of whether "claim" carries a special or limited meaning.  Cf. *United States* v. *Jones*, 131 U. S. 1 (1889) ("claim" in the Little Tucker Act refers only to requests for money).

Of the two constructions of "for or in respect to" the same claim that *Keene* permits—one based on facts alone and the other on factual plus remedial overlap—the former is the more reasonable interpretation in light of the statute's use of a similar phrase in a way consistent only with factual overlap.  The CFC bar applies even where the other action is not against the Government but instead against a "person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States."  The statute refers to a person who acts under color of federal law in respect to a cause of action at the time it arose.  But at that time, the person could not act in respect to the relief requested, for no complaint was yet filed.  This use of the phrase "in respect to a cause of action" must refer to operative facts and not whatever remedies an aggrieved party might later request.  A person acts under color of federal law in respect to a cause of action by claiming or wielding federal authority in the relevant factual context.

Although the two phrases are not identical—one is in respect to a claim, the other a cause of action—they are almost so, and there is reason to think that both phrases refer to facts alone and not to relief. As the *Keene* Court explained, "the term 'claim' is used here synonymously with 'cause of action.'" 508 U. S., at 210. And if either of the two phrases were to include both operative facts and a specific remedy, it would be the one that uses the term "cause of action" rather than "claim." "Cause of action" is the more technical term, while "claim" is often used in a commonsense way to mean a right or demand. Here, for the reasons stated in the preceding paragraph, "in respect to a cause of action" refers simply to facts without regard to judicial remedies. So, if the phrase with the more technical of the two terms does not embrace the concept of remedy, it is reasonable to conclude that neither phrase does. Even if the terms "claim" or "cause of action" include the request for relief, the phrase "for or in respect to" gives the statutory bar a broader scope.

Reading the statute to require only factual and not also remedial overlap makes sense in light of the unique remedial powers of the CFC. The CFC is the only judicial forum for most non-tort requests for significant monetary relief against the United States. See 28 U. S. C. §1491 (2006 ed. and Supp. III); §1346(a)(2) (2006 ed.). Unlike the district courts, however, the CFC has no general power to provide equitable relief against the Government or its officers. Compare *United States* v. *King*, 395 U. S. 1, 2–3 (1969), with 5 U. S. C. §702; see also *United States* v. *Alire*, 6 Wall. 573, 575 (1868) ("[T]he only judgments which the Court of Claims are authorized to render against the government . . . are judgments for money found due from the government to the petitioner"). The distinct jurisdiction of the CFC makes overlapping relief the exception and distinct relief the norm. For that reason, a statute aimed at precluding suits in the CFC that

duplicate suits elsewhere would be unlikely to require remedial overlap.

Remedial overlap between CFC actions and those in other courts was even more unusual when §1500's rule was first enacted in 1868. At that time the CFC had a more limited jurisdiction than it does now, for the Tucker Act's general waiver of sovereign immunity for non-tort claims for monetary relief had not yet been enacted. See 24 Stat. 505. And while the district courts can today adjudicate suits against the United States for money damages under the Little Tucker Act, 28 U. S. C. §1346(a)(2), and the Federal Tort Claims Act §1346(b), in 1868 the United States could only be sued in the Court of Claims. *United States* v. *Mitchell*, 463 U. S. 206, 212–214 (1983); G. Sisk, Litigation with the Federal Government §4.02(a)(1) (4th ed. 2006). Because the kinds of suits and forms of relief available against the United States were few and constrained, remedial overlap between CFC suits and those in other courts was even less common then than now. If the statute were to require remedial as well as factual overlap, it would have had very limited application in 1868 despite its broad language that bars not only identical but also related claims. The rule in §1500 effects a significant jurisdictional limitation, and Congress reenacted it even as changes in the structure of the courts made suits on the same facts more likely to arise. Doing so reaffirmed the force of the bar and thus the commitment to curtailing redundant litigation.

The panel of the Court of Appeals could not identify "any purpose that §1500 serves today," 559 F. 3d, at 1292, in large part because it was bound by Circuit precedent that left the statute without meaningful force. For example, the panel cited *Tecon Engineers, Inc.* v. *United States*, 170 Ct. Cl. 389, 343 F. 2d 943 (1965), which held that §1500 does not prohibit two identical suits from proceeding so long as the action in the CFC, or at that time the

Court of Claims, is filed first. The *Tecon* holding is not presented in this case because the CFC action here was filed after the District Court suit.

Still, the Court of Appeals was wrong to allow its precedent to suppress the statute's aims. Courts should not render statutes nugatory through construction. In fact the statute's purpose is clear from its origins with the cotton claimants—the need to save the Government from burdens of redundant litigation—and that purpose is no less significant today. The conclusion that two suits are for or in respect to the same claim when they are based on substantially the same operative facts allows the statute to achieve its aim. *Keene, supra*, at 206. Developing a factual record is responsible for much of the cost of litigation. Discovery is a conspicuous example, and the preparation and examination of witnesses at trial is another. The form of relief requested matters less, except insofar as it affects what facts parties must prove. An interpretation of §1500 focused on the facts rather than the relief a party seeks preserves the provision as it was meant to function, and it keeps the provision from becoming a mere pleading rule, to be circumvented by carving up a single transaction into overlapping pieces seeking different relief. Cf. *Casman* v. *United States*, 135 Ct. Cl. 647 (1956) (CFC had jurisdiction notwithstanding common facts in district court suit because the plaintiff sought different relief in each forum).

Concentrating on operative facts is also consistent with the doctrine of claim preclusion, or res judicata, which bars "repetitious suits involving the same cause of action" once "a court of competent jurisdiction has entered a final judgment on the merits." *Commissioner* v. *Sunnen*, 333 U. S. 591, 597 (1948). The jurisdictional bar in §1500 was enacted in part to address the problem that judgments in suits against officers were not preclusive in suits against the United States. *Matson Nav. Co.* v. *United States*, 284 U. S. 352, 355–356 (1932). So it is no surprise that the

statute would operate in similar fashion. The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring "claims arising from the same transaction." *Kremer* v. *Chemical Constr. Corp.*, 456 U. S. 461, 482, n. 22 (1982); see also Restatement (Second) of Judgments §24 (1980). The transactional test is of course much younger than the rule embodied in §1500, but even in the 19th century it was not uncommon to identify a claim for preclusion purposes based on facts rather than relief. See J. Wells, Res Adjudicata and Stare Decisis §241, p. 208 (1878) ("The true distinction between demands or rights of action which are single and entire, and those which are several and distinct, is, that the former immediately arise out of one and the same act or contract, and the latter out of different acts or contracts" (internal quotation marks omitted)); 2 H. Black, Law of Judgments §726, p. 866 (1891) (The test for identity is: "Would the same evidence support and establish both the present and the former cause of action?"). Reading §1500 to depend on the underlying facts and not also on the relief requested gives effect to the principles of preclusion law embodied in the statute.

There is no merit to the Nation's assertion that the interpretation adopted here cannot prevail because it is unjust, forcing plaintiffs to choose between partial remedies available in different courts. The hardship in this case is far from clear. The Nation could have filed in the CFC alone and if successful obtained monetary relief to compensate for any losses caused by the Government's breach of duty. It also seems likely that Indian tribes in the Nation's position could go to district court first without losing the chance to later file in the CFC, for Congress has provided in every appropriations Act for the Department of Interior since 1990 that the statute of limitations on Indian trust mismanagement claims shall not run until

the affected tribe has been given an appropriate accounting. See, *e.g.*, 123 Stat. 2922; 104 Stat. 1930.

Even were some hardship to be shown, considerations of policy divorced from the statute's text and purpose could not override its meaning. Although Congress has permitted claims against the United States for monetary relief in the CFC, that relief is available by grace and not by right. See *Beers* v. *Arkansas*, 20 How. 527, 529 (1858) ("[A]s this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted"). If indeed the statute leads to incomplete relief, and if plaintiffs like the Nation are dissatisfied, they are free to direct their complaints to Congress. This Court "enjoy[s] no 'liberty to add an exception . . . to remove apparent hardship.'" *Keene*, 508 U. S., at 217–218 (quoting *Corona Coal Co.* v. *United States*, 263 U. S. 537, 540 (1924)).

*Keene* reserved the question whether common facts are sufficient to bar a CFC action where a similar case is pending elsewhere. To continue to reserve the question would force the CFC to engage in an unnecessary and complicated remedial inquiry, and it would increase the expense and duration of litigation. The question thus demands an answer, and the answer is yes. Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit.

## III

The remaining question is whether the Nation's two suits have sufficient factual overlap to trigger the jurisdictional bar. The CFC dismissed the action here in part because it concluded that the facts in the Nation's two suits were, "for all practical purposes, identical." 79 Fed. Cl. 645, 656 (2007). It was correct to do so.

Opinion of the Court

The two actions both allege that the United States holds the same assets in trust for the Nation's benefit. They describe almost identical breaches of fiduciary duty—that the United States engaged in self-dealing and imprudent investment, and failed to provide an accurate accounting of the assets held in trust, for example. Indeed, it appears that the Nation could have filed two identical complaints, save the caption and prayer for relief, without changing either suit in any significant respect.

Under §1500, the substantial overlap in operative facts between the Nation's District Court and CFC suits precludes jurisdiction in the CFC. The Court of Appeals erred when it concluded otherwise.

IV

The holding here precludes the CFC from exercising jurisdiction over the Nation's suit while the District Court case is pending. Should the Nation choose to dismiss the latter action, or upon that action's completion, the Nation is free to file suit again in the CFC if the statute of limitations is no bar. In the meantime, and in light of the substantial overlap in operative facts between them, the two suits are "for or in respect to" the same claim under §1500, and the CFC case must be dismissed. The contrary judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE KAGAN took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

---

No. 09–846

---

## UNITED STATES, PETITIONER *v.* TOHONO O'ODHAM NATION

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 26, 2011]

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER joins, concurring in the judgment.

Congress enacted the statute currently codified at 28 U. S. C. §1500 to put an end to parallel litigation seeking duplicative relief against the United States and its agents. Respondent Tohono O'odham Nation seeks in the Court of Federal Claims (CFC) some of the same relief on the same facts as it does in its pending District Court action. Accordingly, applying our decision in *Keene Corp.* v. *United States*, 508 U. S. 200 (1993), I agree with the Court that §1500 bars the Nation's CFC action. Because the Nation's two actions seek overlapping relief, this case does not present the question that the Court decides today— whether §1500 bars an action in the CFC when the plaintiff's actions share a common factual basis but seek different forms of relief. Nonetheless, the Court holds that a common factual basis alone suffices to bar jurisdiction in the CFC. Under the Court's reading of the statute, a plaintiff cannot pursue a claim in the CFC based on the same facts as another pending action, even when Congress has required that plaintiff to file separate actions in two courts to obtain different forms of relief necessary to make the plaintiff whole. I cannot agree that §1500 demands this result.

## I

Section 1500 bars jurisdiction in the CFC over "any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States" or any agent of the United States. In *Keene*, we construed this statute to "turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." *Id.*, at 212. It was irrelevant for purposes of §1500, we observed, that the two suits proceeded on different legal theories. *Id.*, at 212. Because the plaintiff's actions both sought the same monetary relief, albeit on different theories, we held that the CFC lacked jurisdiction. *Id.*, at 217–218. We thus found "it unnecessary to consider" whether §1500 barred a CFC claim that was based on substantially the same operative facts as another suit but that sought different relief. See *id.*, at 212, n. 6, 216.

As construed in *Keene*, §1500 bars the Nation's CFC action. As the majority holds, see *ante*, at 9–10, the Nation's CFC and District Court actions are based on nearly identical facts. The two actions also seek overlapping relief: Both complaints request money to remedy the same injury—the Government's alleged breach of its fiduciary duty to maintain accurate accounts of the Nation's assets. The Nation does not dispute that its District Court complaint requests such relief.[1] See Brief for Respondent 51 ("If . . . the accounting reveals that assets that belong to the Nation do not appear on the books, it may be appropriate to order equitable restitution of those assets"). The Nation's CFC complaint is fairly read to do the same. The

---

[1] The majority characterizes the Nation's District Court complaint as seeking "equitable relief," *ante*, at 2, but does not mention that the complaint seeks, among other things, equitable *monetary* relief such as disgorgement and restitution, see App. to Pet. for Cert. 91a.

CFC complaint alleges that the Government has failed "to keep and render clear and accurate accounts." App. to Pet. for Cert. 66a. It claims that by reason of this and other alleged breaches of fiduciary duty, the Nation "has been damaged in such amounts as may be proven at trial." *Id.*, at 67a. And the complaint requests "a determination that the Defendant is liable to the Nation in damages for the injuries and losses caused as a result of Defendant's breaches of fiduciary duty" and a "determination of the amount of damages due the Nation." *Id.*, at 72a–73a. Thus, just like the District Court complaint, the CFC complaint requests money to remedy the Government's alleged failure to keep accurate accounts.[2]

Because the Nation's two complaints are "based on substantially the same operative facts" and there is "at least . . . some overlap in the relief requested," *Keene*, 508 U. S., at 212, §1500 bars jurisdiction over the Nation's CFC action.

## II

The case does not present the question, left open in *Keene*, "whether common facts [alone] are sufficient to bar a CFC action where a similar case is pending elsewhere." *Ante*, at 9. Indeed, for most of the history of this case, the Government did not even argue that common facts were sufficient to preclude CFC jurisdiction; until its petition for rehearing in the Court of Appeals, the Government

---

[2] In reaching the opposite conclusion, the Court of Appeals relied on the fact that the Nation's District Court complaint seeks equitable relief whereas its CFC complaint seeks damages. See 559 F. 3d 1284, 1288–1289 (CA Fed. 2009). *Keene* makes clear, however, that actions based on substantially the same operative facts implicate §1500 so long as they seek overlapping relief. See *Keene Corp.* v. *United States*, 508 U. S. 200, 212 (1993). The formal label affixed to the form of relief sought is irrelevant. In this case, both the Nation's CFC complaint and its District Court complaint seek money to remedy the Government's alleged failure to keep accurate accounts.

argued only that *Keene* required dismissal of the Nation's CFC action because the Nation's two actions were based on the same facts and sought overlapping relief. Deciding this case on the basis of *Keene* would have been the "far more prudent course than recharacterizing the case in an attempt to reach premature decision on an important question." *Missouri* v. *Jenkins*, 495 U. S. 33, 80 (1990) (KENNEDY, J., concurring in part and concurring in judgment). Instead, discarding the restraint we exhibited in *Keene*, the Court unnecessarily chooses to hold that §1500 bars jurisdiction in the CFC whenever a plaintiff's CFC action is based on substantially the same facts as a suit pending elsewhere.[3] This reading of §1500 is, in my opinion, incorrect.

A

Since the enactment of §1500 in 1868, Congress has expanded the avenues by which persons with legitimate claims against the United States may obtain relief. See *ante*, at 6. In some circumstances, Congress has chosen to require plaintiffs to file actions in two different courts to obtain complete relief relating to a single set of operative facts. For example, with some exceptions, the CFC has no power to issue equitable relief. See *Bowen* v. *Massachu-*

---

[3] The majority does not contend that the facts of this case require it to decide this question. It justifies its decision to reach the question on the ground that its rule would eliminate "an unnecessary and complicated remedial inquiry" and would decrease "the expense and duration of litigation." *Ante*, at 9. It provides no reason to believe, however, that inquiry into relief requested is unduly complicated in the vast majority of cases. Cf. *Loveladies Harbor, Inc.* v. *United States*, 27 F. 3d 1545, 1552 (CA Fed. 1994) (en banc) ("The principles of *Casman* [v. *United States*, 135 Ct. Cl. 647 (1956)] . . . are not that difficult to comprehend or apply"). More importantly, the majority does not explain why the benefits it perceives to result from deciding this question today outweigh the potential for its reading of the statute to leave some plaintiffs with incomplete recompense for their injuries. See *infra*, this page and 5–6.

*setts*, 487 U. S. 879, 905 (1988); see also 28 U. S. C. §1491(a). As a result, a plaintiff seeking both money damages and injunctive relief to remedy distinct harms arising from the same set of facts may be forced to file actions in both the CFC and federal district court.

For half a century, the CFC has recognized that §1500 does not preclude jurisdiction in that court when Congress has required a plaintiff to split a claim into two actions to obtain different forms of relief necessary to make the plaintiff whole. In *Casman* v. *United States*, 135 Ct. Cl. 647 (1956), a terminated federal employee sought backpay in the Court of Claims and reinstatement to his position in District Court. The plaintiff's two suits arose from the same facts (his termination) but sought "entirely different" forms of relief within the exclusive jurisdiction of two courts.[4] *Id.*, at 650. In light of our previous recognition that the purpose of §1500 "'was only to require an election between a suit in the Court of Claims and one brought in another court,'" *id.*, at 649 (quoting *Matson Nav. Co.* v. *United States*, 284 U. S. 352, 355–356 (1932)), the Court of Claims held that §1500 was inapplicable when a "plaintiff has no right to elect between two courts," 135 Ct. Cl., at 650. To hold otherwise, the court acknowledged, "would be to say to plaintiff, 'If you want your job back you must forget your back pay'; conversely, 'If you want your back pay, you cannot have your job back.'" *Ibid.;* see also *Loveladies Harbor, Inc.* v. *United States*, 27 F. 3d 1545, 1551 (CA Fed. 1994) (en banc) (reaffirming *Casman*'s inquiry into the form of relief sought).

By reserving the question "whether two actions based on

---

[4] Congress has since enacted legislation to permit plaintiffs in Casman's situation to obtain complete relief in the CFC. See Act of Aug. 29, 1972, §1, 86 Stat. 652, 28 U. S. C. §1491(a)(2) (permitting the CFC to "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records").

the same operative facts, but seeking completely different relief, would implicate §1500," our decision in *Keene* expressly preserved the *Casman* holding. 508 U. S., at 212, n. 6. The consequence of today's decision is clear: The *Casman* rule is no longer good law. Under the majority's reading of §1500, because Casman's two suits were based on common facts, §1500 barred jurisdiction in the CFC over his backpay claim even though he could not have obtained backpay in his District Court action.

The jurisdictional scheme governing actions against the United States often requires other plaintiffs to file two actions in different courts to obtain complete relief in connection with one set of facts. As just one example, an action seeking injunctive relief to set aside agency action must proceed in district court, but a claim that the same agency action constitutes a taking of property requiring just compensation must proceed in the CFC. See, *e.g.*, *Alaska* v. *United States*, 32 Fed. Cl. 689 (1995). After today's decision, §1500 may well prevent a plaintiff from pursuing a takings claim in the CFC if an action to set aside the agency action is pending in district court. This type of plaintiff may face a choice between equally unattractive options: forgo injunctive relief in the district court to preserve her claim for monetary relief in the CFC, or pursue injunctive relief and hope that the statute of limitations on her takings claim, see 28 U. S. C. §2501, does not expire before the district court action is resolved.[5]

--------

[5] The majority apparently doubts that its holding puts the Nation to a similarly difficult choice. It first suggests that the Nation could file solely in the CFC to obtain damages for the Government's alleged breaches of fiduciary duty. See *ante*, at 8. The Nation could indeed choose to file only in the CFC—just as any plaintiff could choose to forgo injunctive relief to pursue money damages in the CFC—but the Nation believes it is entitled to more than monetary relief. The Nation's District Court action seeks an equitable accounting to remedy the same breaches of fiduciary duty, and the CFC has held that it lacks jurisdiction to issue a preliability accounting. See *Klamath and Modoc*

SOTOMAYOR, J., concurring in judgment

## B

### 1

The text, purpose, and history of §1500 provide strong reason to believe that Congress did not intend for §1500 to put plaintiffs to a choice between two nonduplicative remedies that Congress has made available exclusively in two forums. The statute bars jurisdiction in the CFC over a "claim for or in respect to which" a plaintiff has a suit or process pending elsewhere. When Congress first enacted §1500's predecessor, the statute establishing the jurisdiction of the Court of Claims used the term "claims" to refer to demands for money damages. See Act of Mar. 3, 1863, §§2–3, 12 Stat. 765; see *United States* v. *Jones*, 131 U. S. 1, 17 (1889) (noting that the statute's provisions "were inconsistent with the enforcement of any claims under the law except claims for money").[6] Congress thus would have

_____

*Tribes* v. *United States*, 174 Ct. Cl. 483, 487–488, 490 (1966). But see *Eastern Shawnee Tribe of Okla.* v. *United States*, 582 F. 3d 1306, 1308 (CA Fed. 2009) (suggesting in dicta that the CFC can order an equitable accounting as "ancillary relief" under 28 U. S. C. §§1491(a)(2) and (b)(2)), cert. pending, No. 09–1521.

The majority next suggests that Congress has tolled the statute of limitations governing the Nation's CFC claims. See *ante*, at 8–9. But the cited statute only applies to claims "concerning losses to or mismanagement of trust funds." 123 Stat. 2922. It does not appear to toll the statute of limitations for claims concerning assets other than funds, such as tangible assets. See App. to Pet. for Cert. 67a–69a (seeking damages for the Government's mismanagement of the Nation's mineral estates). Expiration of the 6-year statute of limitations governing claims in the CFC is a very real prospect in this and other cases; the Nation's District Court action has been pending for more than four years.

As the majority notes, see *ante*, at 6–7, the validity of the Court of Claims' holding in *Tecon Engineers, Inc.* v. *United States*, 170 Ct. Cl. 389, 343 F. 2d 943 (1965), is not presented in this case. This Court has never considered that holding. Accordingly, I do not consider whether the Nation could have avoided application of §1500 altogether by filing its CFC action first.

[6] Congress has consistently used the term "claim" to refer to a de-

understood the term "claim" in §1500 to describe the particular relief sought in the Court of Claims. Cf. *Commissioner* v. *Keystone Consol. Industries, Inc.*, 508 U. S. 152, 159 (1993).

Determining the meaning of "claim" is only part of the inquiry, however. The question remains what constitutes a suit or process "for or in respect to" a CFC claim. The purpose and history of the statute elucidate the meaning of this ambiguous phrase. As the majority explains, Congress enacted the statute to prevent "duplicative lawsuits" brought by the so-called "cotton claimants" in the aftermath of the Civil War. *Keene*, 508 U. S., at 206; see *ante*, at 3. The cotton claimants sought monetary compensation for seized cotton in the Court of Claims pursuant to the Abandoned Property Collection Act, 12 Stat. 820. Because they had difficulty satisfying the statutory requirement that, to obtain compensation, they must not have given aid or comfort to participants in the rebellion, see §3 of the Act, they also sought relief—either in the form of money damages or actual cotton—in separate lawsuits against federal officials on tort theories such as conversion. "It was these duplicative lawsuits that induced Congress" to enact §1500's predecessor. *Keene*, 508 U. S., at 206.

This historical backdrop sheds light on what Congress would have understood to be a suit or process "for or in respect to" a "claim" in the Court of Claims. Congress undoubtedly intended to preclude a claim for money in the

---

mand for money in the context of the CFC. See 28 U. S. C. §1491(a)(1) (conferring jurisdiction in the CFC over "any *claim* against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort" (emphasis added)). Of course, since §1500's enactment, Congress has authorized the CFC to issue relief other than money damages in certain cases. See §1491(a)(2).

Court of Claims when the plaintiff was pursuing a suit "for" the same money in district court. Because, however, some cotton claimants sought return of the cotton itself in district court, it was also necessary to preclude jurisdiction in the Court of Claims when the plaintiff's other action was "in respect to" that demand for money—*i.e.*, when the plaintiff was seeking duplicative relief. Had the courts awarded such plaintiffs both the cotton itself and money damages, the plaintiffs would have obtained twice what they deserved. In this way, Congress eschewed "a narrow concept of identity" that would have permitted plaintiffs to pursue and obtain duplicative relief to remedy the very same harm. *Id.*, at 213.

The legislative history confirms Congress' intent to preclude requests for duplicative relief. The statute's sponsor explained that the purpose of the statute was "to put to their election that large class of persons having cotton claims[,] . . . who are here at the same time endeavoring to prosecute their claims, and have filed them in the Court of Claims, so that after they put the Government to the expense of beating them once in a court of law they can turn around and try the whole question in the Court of Claims."[7] Cong. Globe, 40th Cong., 2d Sess., 2769 (1868) (statement of Sen. Edmunds); see also *Matson Nav. Co.*, 284 U. S., at 355–356. Congress thus appears to have had in mind cases in which "the whole question" could be tried in the Court of Claims. The statute's history does not suggest that Congress intended to require an election between two nonduplicative forms of relief available exclusively in two different courts. In such a case, "the whole question" could not be tried in either court.

---

[7] Because §1500's jurisdictional bar applies only when the other suit is pending, "there is a good argument that, even when first enacted, the statute did not actually perform the preclusion function emphasized by its sponsor." *Keene*, 508 U. S., at 217.

2

None of the majority's reasons for its contrary construction of the statute is convincing. First, the majority reasons that the phrase "claim for or in respect to" must refer only to factual overlap because the statute uses the phrase "cause of action . . . in respect thereto" (which the majority paraphrases as "in respect to a cause of action") in a way that is "consistent only with factual overlap." *Ante*, at 4. This point rests on a misreading of the statutory text. The statute asks whether a plaintiff has pending a "suit or process" for or in respect to the plaintiff's CFC claim—not whether it has pending a "cause of action" for or in respect to that claim.[8] Even if the term "cause of action" refers only to operative facts—such that the inquiry whether a person was acting under color of federal law in respect to a cause of action is purely factual in nature—a "suit or process" will inevitably include a request for relief.

Second, the majority states that, "in light of the unique remedial powers of the CFC," requiring remedial overlap would make no sense because it would result in a "very limited application" of the statute. *Ante*, at 5, 6. Here, the majority overlooks the nearly 150-year history of the statute. It was the cotton claimants' parallel requests for duplicative relief that prompted passage of §1500 in the first place. Since then, litigants have continued to seek duplicative relief against the Government in two courts, as *Keene* and this very case illustrate. See 508 U. S., at 204–205 (seeking tort damages in the District Court and compensation on a takings theory in the CFC); *supra*, at 1–3 (seeking restitution and disgorgement in the District

———————

[8] Section 1500 refers to the "cause of action alleged in such suit or process" only for the limited purpose of determining whether the other suit or process is against an agent of the United States. When the plaintiff's other action is against the United States itself, the term "cause of action" has no relevance to the §1500 inquiry.

Court and money damages in the CFC); see also, *e.g.*, *Ex parte Skinner & Eddy Corp.*, 265 U. S. 86, 91–92 (1924) (seeking money damages against the United States in the Court of Claims and against a federal entity in state court); *Corona Coal Co.* v. *United States*, 263 U. S. 537, 539 (1924) (seeking money damages against the United States in the Court of Claims and against a federal agent in District Court); *British American Tobacco Co.* v. *United States*, 89 Ct. Cl. 438, 439–440 (1939) *(per curiam)* (seeking tort damages in the District Court and contract damages in the Court of Claims). As these cases make clear, interpreting §1500 to prohibit requests for duplicative relief hardly renders the statute of limited application.

Third, the majority suggests that its construction of §1500 is necessary to achieve the statute's aim of "sav[ing] the Government from burdens of redundant litigation." *Ante*, at 7. Parallel actions seeking the same or duplicative relief, or different forms of relief that are available entirely in one court, are redundant; actions seeking different forms of relief that Congress has made available exclusively in different courts are not. To the extent the majority is concerned about the burdens of parallel discovery, federal courts have ample tools at their disposal, such as stays, to prevent such burdens. See Schwartz, Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents, 55 Geo. L. J. 573, 599 (1967).

Finally, the majority contends that focusing on operative facts is consistent with the principles of claim preclusion embodied in the statute. Claim preclusion ordinarily "bar[s] claims arising from the same transaction." *Kremer* v. *Chemical Constr. Corp.*, 456 U. S. 461, 482, n. 22 (1982). There is, however, an exception to this rule when a plaintiff was unable to obtain a certain remedy in the earlier action. See Restatement (Second) of Judgments §26(1)(c) (1980) (claim preclusion does not apply where "[t]he plaintiff was unable to rely on a certain theory of the case or to

seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts"); see also *Marrese* v. *American Academy of Orthopaedic Surgeons*, 470 U. S. 373, 382 (1985); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §4412, p. 276 (2d ed. 2002). This principle has long informed claim preclusion law. See, *e.g.*, Restatement of Judgments §62, Comment *k* (1942) ("[W]here a plaintiff brings an action in a State in which the courts have jurisdiction only with reference to one portion of his cause of action, he is not barred from maintaining an action in a proper court for the other portion"); 2 H. Black, Law of Judgments §618, p. 744 (1891) ("A judgment is not conclusive of any matter which, from the nature of the case, the form of action, or the character of the pleadings, could not have been adjudicated in the former suit"). For these reasons, preclusion doctrine actually undermines the majority's position.

In sum, the majority offers no coherent justification for its conclusion that Congress intended to preclude jurisdiction in the CFC whenever a plaintiff's claim in that court is based on substantially the same facts as a suit pending elsewhere without reference to the relief sought.

*      *      *

Even before today's decision, §1500 had been described as "anachronistic," *Keene*, 508 U. S., at 217, "harsh," *id.*, at 222 (Stevens, J., dissenting), and "arbitrar[y]," 79 Fed. Cl. 645, 659, n. 16 (2007). Judges and commentators have long called for congressional attention to the statute. See, *e.g.*, *Keene*, 508 U. S., at 222 (Stevens, J., dissenting); Schwartz, *supra*, at 601. Today's decision—which unnecessarily considers and repudiates the *Casman* rule— renders such attention all the more pressing. Under the Court's construction of §1500, plaintiffs whom Congress has forced to file parallel actions in the CFC and a district

court to obtain complete relief must now choose either to forgo relief in the district court or to file first in the district court and risk the expiration of the statute of limitations on their claims in the CFC. I cannot agree that Congress intended, or intends, for §1500 to produce this result. For these reasons, I respectfully concur only in the judgment.

# SUPREME COURT OF THE UNITED STATES

_____

No. 09–846

_____

## UNITED STATES, PETITIONER *v.* TOHONO O'ODHAM NATION

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 26, 2011]

JUSTICE GINSBURG, dissenting.

I dissent from the Court's immoderate reading of 28 U. S. C. §1500 and would affirm the Federal Circuit's judgment.

According to the Court, the Court of Federal Claims (CFC) lacks subject-matter jurisdiction over the Tohono O'odham Nation's (Nation) claim because the Tribe was simultaneously pursuing in the D. C. District Court an action with "a common factual basis." *Ante*, at 1. It matters not, the Court holds, that to gain complete relief, the Nation had to launch two suits, for neither of the two courts whose jurisdiction the Tribe invoked could alone provide full redress. See *ante*, at 8–9.

The Court concludes that "claim" or "cause of action," terms the Court considers synonymous as used in §1500,*

_____

*"'Cause of action,'" the Court simultaneously states, "is the more technical term." *Ante*, at 5. If "more technical" means more precise, clear or certain, the Court is incorrect. See *United States* v. *Memphis Cotton Oil Co.*, 288 U. S. 62, 67–68 (1933) ("A 'cause of action' may mean one thing for one purpose and something different for another."). In its discourse on the term, the Court has fallen into an old error; the drafters of the Federal Rules endeavored to "eliminate the unfortunate rigidity and confusion surrounding the words 'cause of action.'" 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, p. 207 (3d ed. 2004). Today's invocation of a supposed particular or exact meaning for the phrase risks reviving that confusion.

see *ante*, at 5, refers to "operative facts," and not to the remedies a plaintiff seeks. See *ante*, at 4. Section 1500 speaks of "the time when the cause of action . . . arose," a time antedating the commencement of suit. The Court infers, therefore, that a "claim" or "cause of action" is discrete from a pleading's request for relief. See *ante*, at 4. In fact, however, entitlement to relief is essential to the existence of a claim or cause of action, which arises when a person suffers a harm capable of judicial redress. See 2 J. Story, Equity Jurisprudence §1521*a*, p. 741 (8th ed. 1861) ("[T]he cause of action . . . arises when . . . the party has a right to apply to a court . . . for relief.").

A plaintiff may not, §1500 instructs, petition both the CFC and a district court, invoking in each a distinct legal theory appropriate to the forum, but seeking redress for a single injury. When Congress bars a plaintiff from obtaining complete relief in one suit, however, and does not call for an election of remedies, Congress is most sensibly read to have comprehended that the operative facts give rise to two discrete claims. *Casman* v. *United States*, 135 Ct. Cl. 647 (1956), as JUSTICE SOTOMAYOR spells out, see *ante*, at 5, is the paradigm case. There, a discharged federal employee, complaining of wrongful termination, sought reinstatement in a district-court action and backpay in the Court of Claims. Section 1500 does not stand in the way, the Court of Claims held in *Casman*, when the plaintiff suffered two distinct injuries, for which she seeks discrete forms of relief within the exclusive competence of different courts. See 135 Ct. Cl., at 649–650 (claim for backpay "entirely different" from claim for reinstatement). The Federal Circuit, in my view, rightly adhered to *Casman* in *Loveladies Harbor, Inc.* v. *United States*, 27 F. 3d 1545 (1994) (en banc), and rightly did so in this case.

While I agree with much of JUSTICE SOTOMAYOR's opinion concurring in the judgment, I do not agree with her conclusion that §1500 bars the Nation's CFC action.

JUSTICE SOTOMAYOR joins the Court's judgment (although not the Court's reasoning) because the "Tohono O'odham Nation seeks in the [CFC] . . . *some* of the same relief on the same facts as it does in its pending District Court action." *Ante*, at 1 (emphasis added). But to the extent that "the Nation's two actions seek overlapping relief," *ibid*., a disposition less harsh would be in order. Ordinarily, when a plaintiff's allegations and demands for relief are excessive, her complaint is not instantly dismissed on that account. Instead, she may seek leave to trim her pleading, permission a court "should freely give . . . when justice so requires." Rule 15(a)(2) (CFC 2010). Cf. Rule 54(c) (CFC 2010) (judgment, other than default, need not conform to demand for relief, but "should grant the relief to which each party is entitled").

As JUSTICE SOTOMAYOR and the Nation recognize, to avoid both duplication and the running of the statute of limitations, the CFC suit could be stayed while the companion District Court action proceeds. See *ante*, at 11; Brief for Respondent 35. That is a common practice when a prior action is pending. See *Pennsylvania R. Co.* v. *United States*, 363 U. S. 202, 204–206 (1960) (instructing Court of Claims to stay pending proceedings to enable litigant to obtain District Court review of relevant agency order); *Creppel* v. *United States*, 41 F. 3d 627, 633 (CA Fed. 1994) ("[T]he Court of Federal Claims may stay a takings action pending completion of a related action in a district court.").

Why is this Court not positioned to direct the CFC to disregard requests for relief simultaneously sought in a district-court action, or at least to recognize that an amended CFC complaint could save the case? I see no impediment to either course, in §1500 or any other law or rule.